Judy C. Flanagan, Esq.
JUDY C. FLANAGAN, P.C.
77 E. Columbus Ave. Ste. 201
Phoenix, AZ 85012-2352
Phone: (602) 667-6200

Attorney for Petitioner
CARLOS A. BETANCOURTH

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CARLOS A. BETANCOURTH<br>A 208 195 777, an individual<br>　　　　Petitioner,<br><br>　　vs.<br><br>LORETTA LYNCH, in her official capacity as Attorney General of the United States; JEH JOHNSON, in his official capacity as Secretary of the Department of Homeland Security; ALICE MILLER in her official capacity as Interim Phoenix Office of Chief Counsel for the Department of Homeland Security; Phoenix Field Office Director for the Department of Homeland Security Enforcement and Removal Operations,<br><br>　　　　Defendants | Case No.<br><br>**PETITION FOR WRIT OF MANDAMUS, AND**<br><br>*EMERGENCY MOTION* **FOR TEMPORARY RESTRAINING ORDER PENDING HEARING ON PRELIMINARY INJUNCTION**<br><br>Judge: To be Assigned<br>Date/Time: To be Assigned |

## INTRODUCTION

Petitioner Carlos A. Betancourth, by and through counsel, respectfully submits this Complaint for Writ of Mandamus, 28 U.S.C. § 1361 and requests that this Court compel Defendants to take action by following the entirety of the Immigration Judge's September 8, 2016 order – ordering release on recognizance from Immigration and Customs Enforcement

1

("ICE") custody with the additional requirement that ICE transport the Petitioner, Mr. Betancourth, directly to his brother's home in San Antonio, Texas as a necessary "Franco" safeguard. The Immigration Judge's order is well grounded in the *Franco-Gonzalez* authority to order reasonable accommodations under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 and the Board of Immigration Appeals decision in *Matter of M-A-M-*, 25 I. & N. Dec. 474, 483 (BIA 2011) among other provisions of law, however, this Court <u>need not</u> address the intricacies of the law authorizing the Immigration Judge's decision to decide this case, rather the Court need only decide if the Department must follow an Immigration Judge's order in full when an order is issued. *See* 8 C.F.R. § 1003.19 and § 1236.1(d)(1) (general Immigration Judge authority to issue bond orders).

Petitioner hereby further moves this Court to issue a Temporary Restraining Order ("TRO") preventing the Department of Homeland Security ("DHS") or ICE from releasing Petitioner in any manner other than that which was specified in the Immigration Judge's September 8, 2016 order. Petitioner respectfully requests that such TRO remain in effect pending a full hearing on the need for a preliminary injunction. A TRO and preliminary injunction are necessary in this case to preserve Petitioner's constitutional rights and to prevent irreparable injury.

Petitioner Carlos Betancourth is a native and citizen of Honduras who most recently presented at the Nogales Port of Entry seeking admission to the United States. *See* Attachment A (Notice to Appear, hereafter "NTA"). He was thereafter placed in removal proceedings pursuant to Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an alien who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document. Mr. Betancourth was detained in Immigration and Customs Enforcement custody pending adjudication of his removal proceedings. *Id*.

Mr. Betancourth has been detained in the custody of Immigration and Customs Enforcement ("ICE") at the Florence Detention Center in Florence, Arizona since January 27, 2016. *Id*. While in custody, ICE medical professionals diagnosed Mr. Betancourth as suffering

from "delusional disorder" with an "irrational" and "illogical" thought process and poor insight and judgment as to his mental health condition. *See* Attachment B (ICE Health Service Corps Mental Health Review – Form IHSC I-883 dated February 23, 2016).

As a result, on March 15, 2016, Immigration Judge Robert E. Coughlon found Mr. Betancourth "mentally incompetent to represent himself" and ordered that a Qualified Representative be provided to represent him in his removal proceedings. *See* Attachment C (Order of the Immigration Judge dated March 15, 2016). This appointment of counsel was authorized under the Executive Office of Immigration Review's National Qualified Representative Program[1] and required pursuant to the District Court orders in the *Franco-Gonzalez v. Holder* litigation. *See Franco-Gonzalez v. Holder*, 2013 WL 3674492 (C.D. CA, April 23, 2013) (hereafter "*Franco* preliminary injunction"); *Franco-Gonzalez v. Holder*, 2014 WL 5475097 (C.D. CA, October 29, 2014) (hereafter "*Franco* settlement agreement"). In a subsequent mental health evaluation, Psychologist Dr. Laura Brookham confirmed the diagnosis of delusional disorder, finding that while he "was alert and fully oriented to person, place and time," "he was minimally oriented to situation" and "expressed active delusional symptoms related to his political beliefs and status in his country, but no insight." *See* Attachment D at page 8 and 9 (Psychological Evaluation of Dr. Laura Brookham, dated July 29, 2016). Dr. Brookham further specified that Mr. Betancourth's delusions "are best described by the *grandiose* type, in which an individual believes themselves to be in a position of power, with frequent contact with other powerful people, and/or having made an important discovery or an unusually unique level of insight into a problem." *Id*. Dr. Brookham noted the importance of psychotherapy and "reducing stressors in other areas of his life" to "increase his likelihood of a positive prognosis." *Id* at 9.

On or about April 14, 2016 attorneys with the Florence Immigrant and Refugee Rights Project entered their initial appearance as counsel for Mr. Betancourth. On September 8, 2016

---

[1] For more information regarding the Executive Office of Immigration Review's National Qualified Representative Program please see https://www.justice.gov/eoir/national-qualified-representative-program-nqrp.

1 Mr. Betancourth had a custody redetermination hearing at which Immigration Judge Robert E.
2 Coughlon ordered Mr. Betancourth released on his own recognizance with an additional
3 condition ordering "DHS to transport Respondent to brother's home in San Antonio, Tx as a
4 'Franco' safeguard." *See* Attachment E (Order of the Immigration Judge dated September 8,
5 2016) (hereafter "IJ Custody Order").

6      In spite of the Immigration Judge's order specifically requiring that Mr. Betancourth be
7 transported directly to his brother's home in San Antonio, Texas on September 15, 2016 ICE
8 Enforcement and Removal Operations officers and attorneys from the Department of Homeland
9 Security notified Mr. Betancourth's counsel that Mr. Betancourth would be released that day, not
10 to his brother's home in San Antonio, Texas, but instead released to the Phoenix Metropolitan
11 Area. While ICE Enforcement and Removal Operations is willing to work with the Florence
12 Project staff to arrange release to Community Bridges, Inc., a mental health crisis treatment
13 access point located in Mesa, Arizona, they will not transport Mr. Betancourth to any point
14 beyond the Phoenix Metropolitan Area and, thus, will not comply with the second provision of
15 the Immigration Judge's order requiring DHS/ICE to transport Mr. Betancourth to his brother's
16 home in San Antonio, Texas.

17      In immigration removal proceedings, Immigration Judges presiding over cases involving
18 incompetent, *pro se* respondents are required to implement certain reasonable accommodations
19 or "safeguards" to ensure the procedural fairness of the immigration court hearings and ensure
20 that such individuals have meaningful access to the immigration court process. *See Franco*
21 Preliminary Injunction, at *3-4 (requiring appointment of a qualified representative among other
22 accommodations for incompetent, *pro se* respondents detained in ICE custody in Arizona,
23 California, and Washington); *Franco* Settlement Agreement (laying out full terms of settlement
24 and required accommodations); *see also Matter of M–A-M-*, 25 I. & N. Dec. 474, 483 (BIA
25 2011) (providing a non-exhaustive list of potential appropriate safeguards and granting
26 Immigration Judges discretion to determine on a case by case basis which of the listed <u>or other</u>
27 relevant safeguards to utilize). Immigration Judges are specifically granted wide latitude to
28 determine what additional safeguards are appropriate and instructed to consider the particular

4

facts and circumstances of an immigrant's case in making such a determination. *See Matter of M-A-M-*, at 483.

In this case, the Immigration Judge determined that release from detention was an appropriate safeguard to ameliorate stressors of detention, increase his access to family support, and increase his access to therapeutic treatment and psychotherapy. However, because of his current mental health state his appointed counsel felt it was neither safe nor prudent to release him to travel on his own from Phoenix, Arizona to San Antonio, Texas, where his brother resides. His family is unable to make the approximately twenty-eight hour round-trip drive from San Antonio, Texas to Phoenix, Arizona in order to collect Mr. Betancourth. Therefore, the Immigration Judge ordered, as a "Franco" safeguard, that DHS/ICE facilitate Mr. Betancourth's safe and secure release to his family by providing the necessary transport to San Antonio, Texas. *See* Attachment E (IJ Custody Order). This condition not only guaranteed Mr. Betancourth reached the appropriate destination but also ensured that he would be released into the care of other individuals who could help ensure that he receives the support and treatment necessary to allow him to be able to be present and participate in his future Immigration Court proceedings in San Antonio, Texas. Again, Petitioner believes that this order was well grounded in case law granting Immigration Judges authority to issue custody orders and reasonable accommodations for incompetent immigrants in removal proceedings, but <u>this Court need not decide that particular question to rule on this mandamus and emergency motion for a Temporary Restraining Order</u>. Rather, the Court need only decide if DHS/ICE has the authority to, in essence, pick-and-choose the portions of the Immigration Judge's order that they will follow and disregard other explicit provisions of the Immigration Judge's order.

Mr. Betancourth will satisfy the traditional standard for granting a TRO and preliminary injunction. The facts and substantive law of his case indicate a likelihood of success on the merits. The balance of hardships resulting from his potential release against the direct order of the Immigration Judge tips in his favor. Releasing Mr. Betancourth in any way aside from directly to his family would place him in a situation in which at worst, his personal safety will be

1 at risk and, at best, his fundamental right to access the Immigration Court will likely be severely
2 limited if not prevented entirely as a direct result of his mental health condition.
3     Therefore, Petitioner respectfully requests that this Court grant his motion for an
4 emergency TRO pending hearing on the preliminary injunction and order DHS/ICE <u>not to
5 release</u> Mr. Betancourth, unless they do so in a manner that complies <u>in full</u> with the Immigration
6 Judge's September 8, 2016 custody order.

### JURISDICTION

This action arises under the Constitution, and the Immigration & Nationality Act of 1952, as amended ("INA"), 8 U.S.C. § 1101 *et seq*. This Court has subject-matter jurisdiction over his claims pursuant to the Mandamus Act, 28 U.S.C. § 1361; the All Writs Act, 28 U.S.C. § 1651(a); the federal question statute, 28 U.S.C. § 1331. *See e.g. Kashkool v. Chertoff*, 553 F. Supp. 2d 1131, 1134 (D. Ariz. 2008).

While the Department has the ability to appeal the Immigration Judge's custody order to the Board of Immigration Appeals and request that the release be stayed pending a determination of that appeal if they disagree with the Immigration Judge's order, the Department has not exercised that right of appeal and stay to date in this case. *See* 8 C.F.R. § 1003.19(i)(1) (authority to seek stay of custody order) and §1236.1(d)(3) (appeal procedure for custody orders). This power to request a stay of the Immigration Judge's custody order for release is granted solely to the Department of Homeland Security upon an appeal by the government. *See* 8 C.F.R. §1003.19(i) ("Stay of custody order pending appeal by the government"). There is no legal mechanism by which an immigrant can stay compliance with an Immigration Judge's custody order, nor is there a legal appeal mechanism by which an immigrant in Mr. Betancourth's position can prevent DHS from releasing him in a manner that violates certain provisions of the Immigration Judge's custody order. Therefore, Mr. Betancourth has established that no other adequate remedy exists by which he can ensure that, if the Immigration Judge's order for release is enforced, that it is enforced in full.

### STATEMENT OF FACTS

6

1. Carlos Betancourth is native and citizen of Honduras who presented himself at the Nogales Port of Entry on or about January 26, 2016, seeking admission to the United States. *See* Attachment A (NTA).
2. Petitioner has been diagnosed as suffering from "delusional disorder." As a result, an Immigration Judge in Florence, Arizona found him to be incompetent to represent himself in his immigration proceedings and appointed him a Qualified Representative to represent him. *See* Attachments B (Medical Records) and D (Dr. Brookham Evaluation) and (Immigration Judge Incompetency Order).
3. On September 8, 2016, Immigration Judge Robert E. Coughlon ordered Petitioner released on his own recognizance with an additional condition ordering "DHS to transport Respondent to brother's home in San Antonio, Tx as a 'Franco' safeguard." *See* Attachment E (IJ Custody Order). Release from detention was an appropriate safeguard to ameliorate stressors of detention, increase his access to family support, and increase his access to therapeutic treatment and psychotherapy. The additional condition that the government transport Petitioner to his brother's home in San Antonio, Texas was appropriate and necessary because Petitioner's family could not come to Arizona to collect him and because appointed counsel felt it was neither safe nor prudent to release him to travel on his own from Phoenix, Arizona to San Antonio, Texas, where his brother resides.
4. To date, the Department of Homeland Security has not exercised its right to appeal the Immigration Judge's September 8, 2016 order to the Board of Immigration Appeals, nor have they requested a stay of the Immigration Judge's release order pending adjudication of an appeal. *See* 8 C.F.R. § 1236.1(d) and § 1003.19(i).
5. On September 15, 2016, the Department of Homeland Security and ICE Enforcement and Removal Operations contacted the Florence Project, the non-profit legal services provider appointed to represent Mr. Betancourth in his immigration proceedings, and informed Florence Project attorneys that Petitioner would be released that day to the Phoenix Metropolitan Area, not to San Antonio, Texas as ordered by the Immigration Judge.

6. Government transport to San Antonio guarantees that Mr. Betancourth will reach the appropriate destination and ensure that he is released into the care of family who can help him get the support and treatment necessary to allow him to be able to be present and participate in his future Immigration Court proceedings in San Antonio, Texas.

7. Releasing Petitioner on his own recognizance to the Phoenix Metropolitan Area where he has no family or friends nor access to stable housing or other services, places Petitioner in an extremely vulnerable and dangerous situation given his severe mental health condition. Moreover, such a release will like damage Petitioner's fundamental right to access the Immigration Court because, as a result of his delusional thinking, he is unable to maintain regular contact with his legal representation unless he has the support of friends and family to help him keep in contact and he will not have a stable address where counsel can locate him.

## LEGAL ARGUMENT

**A. Petitioner Seeks A Temporary Restraining Order, Pending Hearing on A Preliminary Injunction, Ordering The Department of Homeland Security And Immigration And Customs Enforcement – Enforcement And Removal Operations <u>Not</u> To Release Petitioner To The Phoenix Metropolitan Area In Direct Opposition To The Immigration Judge's September 8, 2016 Custody Order**

Petitioner hereby requests that the Court, on an emergency basis, issue an order temporarily restraining, DHS/ICE from releasing Petitioner in a manner that is inconsistent with the Immigration Judge's September 8, 2016 custody order specifically ordering DHS to transport Petitioner to his brother's home in San Antonio, Texas.

To receive a temporary restraining order or preliminary injunctive relief, a plaintiff `must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that granting an injunction is in the public interest. *See M.R. v. Dreyfus*, 663 Fad 1100, 1107-08 (9thCir. 2011); citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 374 (2008). Alternatively, the Court may issue preliminary injunctive relief and a temporary restraining order where "there is a likelihood of irreparable injury to plaintiff; there are serious

8

questions going to the merits; the balance of hardships tips sharply in favor of the plaintiff; and the injunction is in the public interest." *Id*., citing *Alliance for the Wild Rockies*, 632 F.3d 1127, 1131-32 (9th Cir. 2011). A "serious question" is one for which the moving party has a "fair chance" of success on the merits. *See Stanley v. Univ. of So. Cal.*, 13 F.3d 1313, 1319 (9th Cir. 1994). In this case, Mr. Betancourth can satisfy either test.

## I. Mr. Betancourth Has a Strong Likelihood of Success on the Merits

### a. Mr. Betancourth is Likely to Succeed on His Petition for Writ of Mandamus

A district court may issue a writ of mandamus if: (1) plaintiff has a clear right to relief; (2) defendants have a clear duty to act, and (3) no other adequate remedy is available. *Johnson v. Reilly,* 349 F.3d 1149, 1153 (9th Cir.2003). Mandamus cannot be used to compel or review discretionary acts of governmental officials. *Nova Stylings, Inc. v. Ladd,* 695 F.2d 1179, 1180 (9th Cir.1983). In this case, mandamus is appropriate because DHS/ICE has a clear right to be released <u>and</u> transported to San Antonio, Texas under the plain language of the Immigration Judge's September 8, 2016 custody order, DHS and ICE have a duty to comply with the custody orders of Immigration Judges, there is no legal mechanism by which an immigrant in detention can prevent DHS or ICE from violating an Immigration Judge's order, and compliance with an Immigration Judge's order is not at the discretion of DHS or ICE.

a) <u>Mr. Betancourth has a "clear right to relief"</u>

Immigration Judges are explicitly authorized to issue orders with regard to the custody of immigrants in ICE detention. *See* 8 C.F.R. §1003.19(c)(1). Moreover, Immigration Judges have broad discretion to determine the appropriate conditions of release. *See* Immigration and Nationality Act ("INA") § 236(a)(2) ("the Attorney General… may release the alien on (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General, or (B) conditional parole."); *see also e.g. See Rodriguez v. Robbins*, 804 F.3d 1060, 1066 (9th Cir. 2015) ("*Rodriguez III*") and *Rodriguez v. Robbins,* 715 F.3d 1127, 1131 (9th Cir. 2013) ("*Rodriguez II*") (affirming district court order directing IJ's to "release each Subclass member on reasonable conditions of supervision, including electronic monitoring if

9

necessary, unless the government" satisfied its burden of justifying continued detention.) (citing to *Rodriguez v. Holder*, No. CV 07-3239, 2013 WL 5229795, at *2 (C.D. Cal. Aug. 6, 2013)).

In this case, the Immigration Judge issued a very clear custody order in which he ordered Mr. Betancourth released on his own recognizance and further ordered "DHS to transport Respondent to brother's home in San Antonio, Tx as a 'Franco' safeguard." *See* Attachment E (IJ Custody Order). DHS and ICE are bound to follow the orders of the Immigration Judge. Where DHS disagrees with the custody determination or conditions imposed by an Immigration Judge, there are clear appeal procedures for appeal of the decision to the Board of Immigration Appeals and stay of the custody order pending adjudication of that appeal. 8 C.F.R. § 1236.1(d) (appeal process); 8 C.F.R. § 1003.19(i) (stay of custody order in cases involving government appeal). However, in this case, the Department did not file an appeal, nor a request for the stay of the Immigration Judge's custody order. Rather, the Department unilaterally determined that while it would comply with the Immigration Judge's order with regard to release on recognizance, it would not follow the subsequent portion of the Judge's decision ordering transport to San Antonio, Texas based on a position that such order exceeded the Immigration Judge's authority. In order for judicial orders to have any meaning, parties before the Court cannot be free to simply ignore whole swaths of the Court's lawful order. The Department is bound by the Immigration Judge's order and Mr. Betancourth has a clear right to relief to the extent that he is simply requesting that the parties follow the Immigration Judge's lawfully issued order.

      b)  <u>DHS and ICE have a "clear duty to act"</u>

For the same reasons mentioned above, DHS and ICE have a clear duty to act, in this case, meaning that they have a clear duty to follow the Immigration Judge's lawfully issued order, or if they disagree with that order, to follow the appropriate appeals and stay procedures. Following lawfully issued judicial orders by the Immigration Judge is not up to the discretion of the Department.

        c) <u>No other adequate remedy is available</u>

To the best of Petitioner's knowledge, there is no alternative legal mechanism in place to prevent DHS or ICE from simply refusing to follow portions of an Immigration Judge's order. Unlike the Department, immigrants in Mr. Betancourth's position do not have the ability to file for a stay of implementation of the Immigration Judge's removal order. *See* 8 C.F.R. §1003.19(i).

For these reasons, there is a strong likelihood that the Court will grant mandamus ordering the Department to comply with the Immigration Judge's order <u>in full</u> if they are going to follow the portion of the order granting release on recognizance. If the Department disagrees with the Immigration Judge's order, they can file an appeal and stay the effect of the custody order, however, they are not free to pick-and-chose which parts of the order they will follow and which parts they will not.

## II.    Mr. Betancourth Is Likely to Suffer Irreparable Harm in the Absence of a Restraining Order

Mr. Betancourth is a severely mentally ill individual with no family or friends in the Phoenix Metropolitan Area. He is a citizen of Honduras who has never before been in the United States, knows nothing of Phoenix or any other part of the U.S., and he is a monolingual Spanish speaker. In the best case scenario, he would have a difficult time being released to a new community where he knows no one and has no access to resources based on these difficulties alone. Unfortunately, this is not the best case scenario as Mr. Betancourth also suffers from pervasive delusions that negatively affect his judgment and ability to understand the world around him. *See generally* Attachment B (ICE medical review) and D (Dr. Brookham Evaluation). He lacks insight to his mental health condition and therefore is unlikely to seek treatment or services on his own. *Id*. Because of his mental health condition, he is extremely vulnerable to abuse and harm from others and the likelihood of abuse is only amplified by the fact that he is not familiar with Phoenix or the United States and does not speak English. *See* Attachment F (Affidavit of Dr. Brookham addressing potential harm on release without support network).

If he is released to the Phoenix Metropolitan Area rather than his brother's home in San Antonio, Texas, he will have no family or friends to support him or give him a stable place to reside or even pass the night.  He will be <u>homeless</u>.  He is in very real danger of facing exposure to the elements, hunger, and being a victim of a crime because he will be living on the streets.  Additionally, if he is released to Phoenix and becomes homeless, which is the most likely scenario, he will not have any reliable way for him to communicate with his attorneys who are trying to help him and there will be no reliable way for his attorneys to locate him once he is released. Given that scenario, it is very possible that Mr. Betancourth will lose contact with his attorneys and be thereby denied his opportunity and right to participate in his immigration court proceedings.

### III.  The Balance of Hardships Tips Sharply in Petitioner's Favor

"The relative hardship to the parties" is the "critical element" in deciding at which point along the continuum an injunction is justified.  A minimal showing on the merits is required when the balance of hardships tips so strongly toward the moving party.  *Benda*, 584 F.2d at 315.

The government will suffer minimal hardship in simply following the Immigration's Judge ordering that DHS transport Mr. Betancourth to his brother's home in San Antonio, Texas. ICE Enforcement and Removal Operations ("ERO"), is one part of a national system for the detention, transportation, and removal of immigrants in removal proceedings.  Upon information and belief, ICE ERO has numerous mechanisms for transporting individuals around the United States and throughout the world, including an air travel operation known as "ICE Air," which "supports [ERO's] mission by providing air transportation services to ERO's 24 field offices, to facilitate the movement of aliens *within the United States* and also the removal of aliens to destinations worldwide." *See* ICE Air Operations, available at https://www.ice.gov/factsheets/ice-air-operations. Because the transportation of aliens within the United States is part of the regular job duties of ICE ERO and because ICE ERO has access to means by which to conduct such transportation, the costs associated with complying with the Immigration Judge's order that Mr. Betancourth be transported to San Antonio, Texas are likely to be minimal.

In contrast, if Mr. Betancourth is allowed to be released to Phoenix in direct opposition to the Immigration Judge's lawfully issued order, Mr. Betancourth faces very real and possibly substantial physical danger as he is a severely mentally ill individual, suffering from pervasive delusions, and will effectively be homeless and without any access to resources or support if released in Phoenix.  *See* Attachment F (Dr. Brookham Affidavit). Moreover, Mr. Betancourth will be at very real risk of losing his right to participate and have access to the Immigration Court proceedings as his delusions could well interfere with his ability to communicate with his attorney without assistance and it is unlikely that he will have stable housing or other means by which his attorney can locate him to continue to assist him.  It is an extremely rare circumstance that an attorney will advocate against the release of a client in ICE custody, but this is one such case because release to any location other than his brother's custody in these circumstances would pose a severe risk of both physical harm to Mr. Betancourth as well as loss of his fundamental rights as a direct result of his mental health condition.

**IV.     Granting Injunctive Relief Will Not Adversely Affect the Public Interest**

The public has a strong interest in both ensuring the rule of law and that lawful judicial orders are followed by all parties to litigation. This public interest is not served by allowing DHS to pick-and-chose which portions of the Immigration Judge's order they agree with and disregard the rest.  Moreover, the public has an interest to see that particularly vulnerable individuals, like the severely mentally ill, are not unduly placed in harm's way through unlawful government action.

**CONCLUSION**

Based on the foregoing reasons, the Court should enter a temporary restraining order, pending a full hearing on preliminary injunction, restraining the Department of Homeland Security and Immigration and Customs Enforcement from releasing Petitioner, Mr. Betancourth, from ICE custody in any manner that is not in full compliance with the Immigration Judge's September 8, 2016 custody order.

Respectfully submitted this 15th day of September, 2016.

By: _____s/Judy C. Flanagan_____
Judy C. Flanagan
Attorney for Petitioner

Attachments:
- A. Notice to Appear for Carlos Betancourth, dated January 26, 2016
- B. ICE Health Service Corps Mental Health Review – Form IHSC I-883 dated February 23, 2016
- C. Order of the Immigration Judge finding Mr. Betancourth incompetent to represent himself, dated March 15, 2016
- D. Psychological Evaluation of Dr. Laura Brookham, dated July 29, 2016
- E. Order of the Immigration Judge regarding custody, ordering release on recognizance and ordering DHS to transport Mr. Betancourth to San Antonio, Texas, dated September 8, 2016
- F. Affidavit of Dr. Brookham addressing potential harm Mr. Betancourth will face on release if he is released without a support network